Sim Gill (Utah Bar No. 6389)
Salt Lake County District Attorney
Darcy M. Goddard (Utah Bar No. 13426)
Deputy District Attorney
Office of the Salt Lake County District Attorney
35 East 500 South, Salt Lake City, Utah 84111
Telephone: 385.468.7700
Facsimile: 385.468.7800
E-mail: dgoddard@slco.org

*Counsel for Salt Lake County District Attorney Sim Gill*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Planned Parenthood Association of Utah, on behalf of itself and its patients, physicians, and staff,<br><br>    Plaintiff,<br><br>v.<br><br>Joseph Miner, in his official capacity as Executive Director of the Utah Department of Health, et al.,<br><br>    Defendants. | Case No. 2:19-cv-00238-CW<br><br>**SALT LAKE COUNTY DISTRICT ATTORNEY SIM GILL'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>The Honorable Clark Waddoups |

In his official capacity as the Salt Lake County District Attorney, Sim Gill ("DA Gill") submits this Answer and Affirmative Defenses to Plaintiff Planned Parenthood Association of Utah's ("PPAU") Complaint for Declaratory and Injunctive Relief (Doc. 2).

# INTRODUCTORY STATEMENT

The Salt Lake County District Attorney's Office ("DA Office"), including DA Gill and every deputy district attorney he supervises, is obligated to enforce the criminal laws of the State of Utah. When doing so, however, DA Gill and his deputies must also at all times act consistently with (i) the United States and Utah State Constitutions, (ii) governing legal authority from the United States Supreme Court, the Utah Supreme Court, and those lower courts whose decisions are binding precedent in Utah, (iii) rules governing or advising the conduct of attorneys, including the Utah Rules of Professional Conduct and the American Bar Association Criminal Justice Standards for the Prosecution Function, and (iv) the ethical and moral responsibilities that are incumbent on prosecutors to ensure a fair and reasoned criminal justice system.

In passing HB136 (Doc. 2-1), the Utah State Legislature exercised the policy-making authority that is uniquely vested in it under our system of government, which is comprised of three co-equal branches of government: the Legislative, which makes the laws; the Executive, which enforces the laws; and the Judicial, which interprets the laws. It is the final, judicial, function that is vitally important today; the authority of the judiciary to "check" the power of the Legislative and Executive branches is essential for the vigorous protection of individuals' constitutional rights to, among other rights, be free from unwarranted government intrusions into their personal lives and protected liberty and due process interests.

While passage of HB136 was plainly within the purview of the Legislature, the legislation itself—which would impose a statutory ban, except in very limited circumstances, on abortions performed at or after 18 weeks—is just as plainly contrary to binding legal precedent

from the Tenth Circuit Court of Appeals, which in 1996 considered and rejected as constitutionally unsound a similar yet less restrictive Utah statute. *Jane L. v. Bangerter*, 102 F.3d 1112 (10th Cir. 1996) (interpreting United States Supreme Court decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), to strike down Utah's then-existing statutory ban on most abortions performed at or after 22 weeks).  Under HB136, the only exceptions to the 18-week ban are, for example, when the fetus has developed a "lethal" anomaly or "severe brain abnormality" that is uniformly diagnosable, as determined by two separate medical doctors in writing (and excluding, among other things, spina bifida, cerebral palsy, or "any other malformation, defect, or condition that does not cause an individual to live in a mentally vegetative state"), or when a victim of rape, rape of a child, or incest has reported the crime to law enforcement, as verified by a medical doctor, <u>and</u> the victim can establish that the pregnancy is "as a result of" the sexual violence perpetrated against her.[1]  In addition to contravening legal precedent, HB136 further purports to impose criminal liability and fines for those medical professionals or clinics that are found to violate the strict provisions of the new law.  These criminal sanctions are apparently why DA Gill is named as defendant in this matter even though PPAU's true quarrel is not with him but with the State of Utah.

Enforcement by any prosecutor of the criminal sanctions in HB136 would, in the view of DA Gill, violate clearly established federal law that he and his deputies are legally,

---

[1] Given that only approximately 12% of sexual assaults are reported by victims to law enforcement, and given the near-impossibility for an otherwise sexually active woman who is raped to prove that her pregnancy is definitively "a result of" the rape, DA Gill also has grave concerns that the strict time limits and evidentiary requirements of HB136 may disproportionately impact victims of sexual violence.  That concern is only exacerbated when viewed from the perspective of child victims of incest, whose only access to early medical care may be through the abuser himself or herself.

professionally, and morally bound to follow.  It is therefore the policy of DA Gill that neither he nor any of his deputies will commence any criminal prosecution in connection with the 18-week ban unless and until the Tenth Circuit or the United States Supreme Court issues an opinion upholding as constitutional the 18-week ban provided for in HB136.

## ANSWER

DA Gill answers the allegations in PPAU's Complaint as follows:

1. In response to paragraphs 1-3 of the Complaint, DA Gill avers that these paragraphs contain legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  DA Gill further avers that HB136 (Doc. 2-1) and the decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Jane L. v. Bangerter*, 102 F.3d 1112 (10th Cir. 1996), speak for themselves.  All remaining allegations, as they would relate to DA Gill, are denied.

2. In response to paragraphs 4-6 of the Complaint, DA Gill avers that these paragraphs contain legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  DA Gill agrees, however, that this Court has subject matter jurisdiction and statutory authority to adjudicate PPAU's claims and causes of action in the Complaint, and that venue is proper in this judicial district.  All remaining allegations, as they would relate to DA Gill, are denied.

3. In response to paragraph 7 of the Complaint, DA Gill lacks sufficient knowledge or information to admit or deny most of the allegations in that paragraph.  On information and belief, DA Gill admits, however, that PPAU provides vital health care services to residents of Salt Lake County, including but not limited to "annual wellness exams, contraception and

contraceptive education, pregnancy testing and options counseling, testing for HIV and sexually transmitted infections, and screenings for breast and cervical cancer." On information and belief, DA Gill further accepts as true for purposes of this litigation that "PPAU's Metro Health Center is the only clinic providing generally available abortion care in Utah at and after 18 weeks of pregnancy." All remaining allegations, as they would relate to DA Gill, are denied.

4. In response to paragraph 8 of the Complaint, DA Gill avers that this paragraph contains legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied. On information and belief, DA Gill admits, however, that Joseph Miner is the Executive Director of the Utah Department of Health. All remaining allegations, as they would relate to DA Gill, are denied.

5. In response to paragraph 9 of the Complaint, DA Gill avers that this paragraph contains legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied. On information and belief, DA Gill admits, however, that Mark Steinagel is the Director of the Utah Division of Occupational and Professional Licensing. All remaining allegations, as they would relate to DA Gill, are denied.

6. In response to paragraph 10 of the Complaint, DA Gill avers that this paragraph contains legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied. DA Gill further lacks sufficient knowledge or information to admit or deny some of the allegations in paragraph 10. On information and belief, DA Gill accepts as true for purposes of this litigation, however, that "PPAU's Metro Health Center is the only clinic providing generally available abortion care in Utah at and after 18 weeks of pregnancy" (Compl. at ¶ 7), and thus that "PPAU offers abortion care at and after 18 weeks"

in Salt Lake County.  DA Gill affirmatively avers, however, that his "authority to prosecute criminal violations of the 18-week ban" is limited by holdings of the United States Supreme Court and the Tenth Circuit Court of Appeals in *Roe* and *Jane L.*, respectively, such that any criminal prosecution on that basis would be constitutionally barred by clearly established federal law.  All remaining allegations, as they would relate to DA Gill, are denied.

7. In response to paragraph 11 of the Complaint, DA Gill avers that this paragraph contains legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  All remaining allegations, as they would relate to DA Gill, are denied.

8. In response to paragraph 12 of the Complaint, DA Gill avers that this paragraph contains legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  All remaining allegations, as they would relate to DA Gill, are denied.

9. In response to paragraphs 13-18 of the Complaint, DA Gill avers that these paragraphs contain legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  DA Gill further avers that the decision in *Jane L.* (and its subsequent procedural history), as well as Utah's current statutory scheme for regulating abortion, speak for themselves.  All remaining allegations, as they would relate to DA Gill, are denied.

10. In response to paragraphs 19-22 of the Complaint, DA Gill avers that these paragraphs contain legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  DA Gill further avers that HB136

(Doc. 2-1) speaks for itself.  All remaining allegations, as they would relate to DA Gill, are denied.

11. In response to paragraph 23 of the Complaint, DA Gill admits: that HB136 (Doc. 2-1) purports to authorize criminal prosecution for "violation of the 18-week ban"; that a criminal prosecution, if commenced, could involve a second-degree felony charge; and that second-degree felony convictions in Utah may carry a prison term of 1-15 years and may involve fines of up to $10,000 (individual) to $20,000 (corporation).  DA Gill affirmatively avers, however, that the "authority to prosecute criminal violations of the 18-week ban" (Compl. at ¶ 10) is limited by holdings of the United States Supreme Court and the Tenth Circuit Court of Appeals in *Roe* and *Jane L.*, respectively, such that any criminal prosecution on that basis would be constitutionally barred by clearly established federal law.  All remaining allegations, as they would relate to DA Gill, are denied.

12. In response to paragraphs 24-26 of the Complaint, DA Gill avers that these paragraphs contain legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  DA Gill further avers that HB136 (Doc. 2-1) and the decision in *Jane L.* speak for themselves.  All remaining allegations, as they would relate to DA Gill, are denied.

13. In response to paragraphs 27-33 of the Complaint, DA Gill lacks sufficient knowledge or information to admit or deny most of the allegations in these paragraphs.  On information and belief, DA Gill agrees, however, that: "[p]atients decide to end a pregnancy for a variety of reasons, including familial, medical, financial, and personal reasons" (Compl. at ¶ 28); "[p]atients obtain abortions at or after 18 weeks for a variety of reasons" (*id.* at ¶ 30); "[u]nder

HB136, women wishing to have a previability abortion at or after 18 weeks [would be] unable to do so in Utah unless they are covered by one of the exceptions applicable under the Act" (*id.* at 32), including exceptions purporting to limit the rights of victims of rape or incest.  All remaining allegations, as they would relate to DA Gill, are denied.

14.     In response to paragraph 34 of the Complaint, DA Gill accepts as true the allegation that HB136 "presents PPAU and its providers with an untenable choice" between the threat of criminal sanction "for continuing to provide abortion care in accordance with their best medical judgment, or [to] stop providing the critical care on which patients across Utah rely." DA Gill affirmatively avers, however, that the "authority to prosecute criminal violations of the 18-week ban" (Compl. at ¶ 10) is limited by holdings of the United States Supreme Court and the Tenth Circuit Court of Appeals in *Roe* and *Jane L.*, respectively, such that any criminal prosecution of "PPAU and its providers" on that basis would be constitutionally barred by clearly established federal law.  All remaining allegations, as they would relate to DA Gill, are denied.

15.     In response to paragraphs 35-40 of the Complaint, DA Gill avers that these paragraphs contain legal arguments, legal and factual conclusions, and other matters DA Gill is not required to answer and that are consequently denied.  DA Gill further avers that injunctive relief as against him or the DA Office (Compl. at ¶ 38) is not necessary because the authority of DA Gill or the DA Office to enforce the criminal prosecution provisions set forth in HB136 is limited by holdings of the United States Supreme Court and the Tenth Circuit Court of Appeals in *Roe* and *Jane L.*, respectively, such that any criminal prosecution on that basis would be constitutionally barred by clearly established federal law.  Accordingly, it is the policy of DA

Gill that neither he nor any of his deputies will commence any criminal prosecution in connection with the 18-week ban unless and until the Tenth Circuit or the United States Supreme Court issues an opinion upholding as constitutional the 18-week ban provided for in HB136. All remaining allegations, as they would relate to DA Gill, are denied.

16. All remaining allegations, as they would relate to DA Gill, that are not expressly admitted above are denied.

## FIRST AFFIRMATIVE DEFENSE

PPAU fails to state a claim on which relief can be granted as against DA Gill, who understands and agrees with PPAU that the authority of DA Gill or the DA Office to enforce the criminal prosecution provisions set forth in HB136 is limited by holdings of the United States Supreme Court and the Tenth Circuit Court of Appeals in *Roe* and *Jane L.*, respectively, such that any criminal prosecution on that basis would be constitutionally barred by clearly established federal law.

## SECOND AFFIRMATIVE DEFENSE

PPAU lacks standing to assert claims or causes of action in this matter as against DA Gill as there is no true "case or controversy" between them in light of DA Gill's policy that neither he nor any of his deputies will commence any criminal prosecution in connection with the 18-week ban unless and until the Tenth Circuit or the United States Supreme Court issues an opinion upholding as constitutional the 18-week ban provided for in HB136.

## THIRD AFFIRMATIVE DEFENSE

Any injuries or damages to PPAU, or to the individuals or entities represented by PPAU, have resulted or will result from the acts or omissions of others and without any fault on the part of DA Gill.

## FOURTH AFFIRMATIVE DEFENSE

PPAU's demand for injunctive relief as against DA Gill or the DA Office is not necessary because DA understands and agrees that the authority of DA Gill or the DA Office to enforce the criminal prosecution provisions set forth in HB136 is limited by holdings of the United States Supreme Court and the Tenth Circuit Court of Appeals in *Roe* and *Jane L.*, respectively, such that any criminal prosecution on that basis would be constitutionally barred by clearly established federal law.  Accordingly, it is the policy of DA Gill that neither he nor any of his deputies will commence any criminal prosecution in connection with the 18-week ban unless and until the Tenth Circuit or the United States Supreme Court issues an opinion upholding as constitutional the 18-week ban provided for in HB136.

## FIFTH AFFIRMATIVE DEFENSE

PPAU's claims or causes of action in this matter as against DA Gill may be barred, in whole or in part, by the doctrine of qualified immunity.

## SIXTH AFFIRMATIVE DEFENSE

PPAU's claims or causes of action in this matter as against DA Gill may be barred, in whole or in part, by the Utah Governmental Immunity Act and by PPAU's failure to comply with the relevant provisions thereof.

**SEVENTH AFFIRMATIVE DEFENSE**

DA Gill may be entitled to recover his attorney fees and costs incurred in defense of this matter, to the extent permitted by law.

**EIGHTH AFFIRMATIVE DEFENSE**

DA Gill reserves all rights to set forth additional defenses and claims in defense of this matter, or as against other parties named herein, as may appear warranted on further investigation and discovery in this case.

Respectfully submitted this 18th day of April, 2019.

        Sim Gill
        Salt Lake County District Attorney

        /s Darcy M. Goddard
        Darcy M. Goddard
        Deputy District Attorney
        Counsel for Salt Lake County District Attorney
          Sim Gill