DAVID N. WOLF (6688)
LANCE SORENSON (10684)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: lancesorenson@agutah.gov

*Counsel for State Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD ASSOCIATION OF UTAH,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MINER, in his official capacity as Executive Director of the Utah Department of Health; MARK B. STEINAGEL, in his official capacity as Director of the Utah Division of Occupational and Professional Licensing; SIM GILL, in his official capacity as District Attorney for Salt Lake County; SEAN D. REYES, in his official capacity as Attorney General for the State of Utah; and GARY R. HERBERT, in his official capacity as Governor for the State of Utah,<br><br>Defendants. | **STATE DEFENDANTS' MOTION TO ALLOW LIMITED PROPORTIONAL DISCOVERY AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Case No. 2:19-cv-00238<br><br>Judge Clark Waddoups |

# MOTION

Defendants Joseph Miner, Mark B. Steinagel, Sean D. Reyes and Gary R. Herbert

(collectively, the "State"), by and through counsel, hereby respectfully move this Court to allow limited and proportional discovery relevant to Plaintiff's claim and the State's defenses. Specifically, the State requests leave from the Court to conduct limited discovery of seven issues: (1) the specific procedures Plaintiff uses for post-18 week abortions, including whether Plaintiff uses dilation and extraction; (2) whether other procedures are available to perform post-18 week abortions and, if so, what those procedures entail; (3) the percentage of post-18 week abortions Plaintiff performs that are for Utah residents; (4) the gestational ages at which Plaintiff performs abortions; (5) Plaintiff's knowledge of fetal development including the capacity of a fetus to experience pain during an abortion; (6) Plaintiff's knowledge of the risks to maternal health for post 18-week abortions; and (7) the effect of post 18-week abortions on the integrity and ethics of the medical profession. The State also seeks to identify experts and issue expert reports.[1] A proposed scheduling order is attached hereto as Exhibit A.

Allowing a few months to conduct discovery will have no impact on Plaintiff, or the women who receive its services, because HB 136 will not be enforced during the pendency of this case due to the Court's entry of a stipulated preliminary injunction. But precluding discovery will greatly prejudice the State by preventing it from gathering evidence necessary to fully present its defenses to this Court and to make a complete record for reviewing appellate courts.

---

[1] The State anticipates identifying experts who will issue reports on, among other things, current research regarding fetal development, maternal health and the medical ethics of abortion, and experts who will explain to the Court the procedure most commonly used for post 18-week abortions – dilation and extraction.

**MEMORANDUM**

I.  **Background**

In March 2019, the Utah Legislature passed House Bill 136 ("HB 136"), which amends Utah's Criminal Code to provide that "a person may not perform or attempt to perform an abortion after" a fetus "reaches 18 weeks gestational age." HB 136, § 3.  HB 136 measures "gestational age … from the first day of the last menstrual period of the pregnant woman." *Id.* § 1.  But HB 136 contains a number of exceptions to its post-18-week ban: it provides that a post 18-week abortion may be provided "in the case of a severe [fetal] brain abnormality that is uniformly diagnosable." HB 136, § 2.  And it preserves women's ability to seek abortions past 18 weeks for reasons set forth in UTAH CODE § 76-7-302(3)(b).  These provisions allow a woman to seek an abortion where necessary to avert her death or a serious risk of substantial and irreversible impairment of a major bodily function; where the fetus has a defect that is uniformly lethal; or where the pregnancy was the result of rape or incest.

Plaintiff challenges the constitutionality of HB 136, alleging it violates the Due Process Clause of the Fourteenth Amendment.  Compl., ¶¶ 2, 37.  The State denies HB 136 is unconstitutional.  Answer, ¶ ¶ 1, 36.  Plaintiff and the State stipulated to a preliminary injunction by which the State is enjoined from enforcing HB 136 during the pendency of this litigation.  The State hereby seeks leave from the Court for limited and proportional discovery of the seven issues identified above.

II.  **Rule 26(b)(1) Relevance**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1).

The considerations for determining whether discovery is proportional include, inter alia, "the importance of the issues at stake in the action . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

"The language and interpretation of Rule 26(b)(1) indicate that, at least at the discovery stage, the concept of relevance should be construed very broadly." *Gohler v. Wood*, 162 F.R.D. 691, 695 (D. Utah 1995). Relevancy is "broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is *any possibility* that the information sought *may be relevant* to the subject matter of the action." *US Magnesium, LLC v ATI Titanium LLC*, No. 2:17-cv-00923, 2018 WL 3719254, at *1 (D. Utah Aug. 3, 2018)(internal citation omitted)(emphasis added).

**III.** **The State's request for discovery is relevant, under *Roe*, *Casey*, and *Gonzales*, to the claims and defenses at issue in this important case**

During the April 18 status conference, Plaintiff argued that the State's requests for discovery were irrelevant to the question of whether HB 136 constitutes an undue burden on a woman's right to an abortion pre-viability. But part of the State's defense to Plaintiff's claim is that any burden created by HB 136 is not "undue" because HB 136 furthers State interests clearly recognized in Supreme Court precedent: the interests in safe guarding pre-viable potential life from pain caused by abortion; protecting maternal health; protecting the integrity and ethics of the medical profession; and expressing profound respect for life by banning gruesome and inhumane procedures. HB 136 expresses the State's profound respect for human life, while providing access to abortion before 18 weeks gestational age.

4

*A. The Supreme Court's abortion jurisprudence permits states to regulate abortion before viability even if those laws make abortion more expensive or difficult to obtain*

*Roe v. Wade*, 410 U.S. 113 (1973), established a constitutional right to an abortion. But even *Roe* affirmed that the states have "important and legitimate interest[s] in protecting the potentiality of human life." *Roe*, 410 U.S. at 162. In many abortion cases since *Roe*, the primary debate has been the proper balancing of a woman's right to decide to have an abortion versus a state's right to protect unborn life. *Roe* set forth a trimester framework within which to analyze abortion regulation and disallowed government regulations of abortion in the first trimester. *Id*. at 164.

The Court reexamined *Roe*'s framework for abortion *in Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992). *Casey* reaffirmed that "the State has legitimate interests *from the outset of pregnancy* in protecting the health of the woman and the life of the fetus that may become a child." *Casey*, 505 U.S. at 846. (emphasis added). *Casey* further recognized that *Roe* and its progeny's treatment of all pre-viability government regulations as unwarranted was "incompatible with the recognition that there is a substantial state interest in potential life throughout pregnancy." *Id*. at 876. Therefore, a three-Justice plurality in *Casey* modified *Roe* by rejecting its rigid trimester framework and replacing it with a new test. The plurality adopted a balancing approach by which pre-viability regulations of abortion were permissible unless "the purpose or effect [of a law] is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Id*. at 878.

Since *Casey*, courts have sought to determine whether pre-viability regulations are "undue." The Court once again recalibrated the balancing test and provided important clarification on the meaning of "undue" in *Gonzales v. Carhart*, 550 U.S. 124 (2007). The

5

*Casey* decision must be interpreted through the lens of *Gonzales*.

In *Gonzales*, the Court considered the constitutionality of a federal ban on intact dilation and extraction or "partial birth abortion." *Gonzales* is the most recent Supreme Court case where the states' interest in protecting unborn life was squarely presented.[2] *Gonzales* upheld Congress's decision to totally ban partial-birth abortions based in large part on the legislative conclusion that "[i]mplicitly approving such a brutal and inhumane procedure by choosing not to prohibit it will further coarsen society to the humanity of not only newborns, but all vulnerable and innocent human life." *Gonzales*, 550 U.S. at 157.

In *Gonzales*, the Court stated: "Congress found, among other things, that '[a] moral, medical, and ethical consensus exists that the practice of performing a partial birth abortion . . . is a gruesome and inhumane procedure that is never medically necessary and should be prohibited.'" *Id*. at 141(internal citation omitted). The Court noted that "state and federal legislatures [are given] *wide discretion* to pass legislation in areas where there is medical and scientific uncertainty." *Id* at 163 (emphasis added). Therefore, the Court ruled that the federal partial birth abortion ban "does not on its face impose a substantial obstacle" to pre-viability abortions. *Id*. at 156. Central to the Court's holding was its recognition that the "government may use its voice and its regulatory authority to show its profound respect for the life within the woman." *Id*. at 157. *Gonzales* reiterated *Casey's* assertion that "the fact that a law which serves a valid purpose, one not designed to strike at the right itself, has an incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it." *Id*. at

---

[2] The legislation at issue in *Whole Woman's Health v. Hellerstedt*, 579 U.S. \_\_\_, 136 S. Ct. 2292 (2016), for example, was not expressly aimed at safe guarding unborn life, but at ensuring that abortion providers and facilities met minimum standards of care.

157-58 (internal citation omitted). In addition to the state interests of protecting maternal health as well as expressing profound respect for life by banning certain gruesome and inhumane procedures, *Gonzales* also held that "[t]here can be no doubt that the government has an interest in protecting the integrity and ethics of the medical profession." *Id*. at 157 (internal citation omitted).

Justice Ginsburg dissented in *Gonzales*, arguing that the majority "blur[red] the line, firmly drawn in *Casey*, between pre-viability and post-viability abortions." *Id*. at 171. She was correct. *Gonzales* changed the way the balancing test is applied and clarified that viability is not a bright line before which a state may never venture, especially where there is medical and scientific uncertainty. *Id*. at 163. Rather, as medical knowledge grows – especially knowledge related to fetal development, including a fetus's capacity to experience pain – states are permitted to express their "profound respect for life within the woman," even when such life is pre-viable. *Id*. at 157. As discussed below, HB 136 expresses "profound respect for life," both the unborn child's and the mother's, by limiting abortion to the period of gestational development before a fetus can likely experience severe pain and before complications to maternal health resulting from abortion increase. At the same time, HB 136 leaves open access to abortion before 18 weeks—and preserves a number of exceptions to the ban on abortion after 18 weeks.

The Tenth Circuit Court of Appeals did not have the benefit of *Gonzales* when it reviewed Utah's 1991 abortion law. It therefore held in 1996 that Utah's 1991 prohibition on abortion after 20 weeks gestational age (as measured from conception) contradicted *Casey* and was therefore unconstitutional. *See Jane L. v. Bangerter*, 102 F.3d 1112 (10th Cir. 1996). The

7

Tenth Circuit in *Jane L.* treated viability as a bright line that had not yet been "blurred," as Justice Ginsburg described, by *Gonzales*. Before *Gonzales* it is understandable why courts, like the Tenth Circuit in *Jane L.*, may have considered primarily the pregnant woman's burden when balancing her interests against the State's. *Gonzales* recalibrated the balancing scale, however, to emphasize that when conducting the undue burden test, a court must also give due consideration to the State's legitimate and valid interests. Protecting an unborn child from severe and unnecessary fetal pain is a valid and legitimate State interest. Limiting abortions to a point in the pregnancy where there are fewer life-threatening complications to the mother is also a valid and legitimate interest.

### B. HB 136 serves a valid purpose by protecting unborn infants from fetal pain and protecting maternal health

*Casey* recognized that medical advancements are intertwined with the Supreme Court's abortion jurisprudence. *See Casey*, 505 U.S. at 870 ("To be sure . . . there may be some medical developments that affect the precise point of viability"). And it was precisely a greater medical understanding of the partial birth abortion procedure that led Congress to ban it in 2003, which ban the Court upheld in *Gonzales*. *Gonzales*, 550 U.S. at 141. Similarly, knowledge of fetal pain and maternal health today surpasses the knowledge that existed more than a quarter of a century ago when the Court decided *Casey*. A growing body of medical literature establishes that a fetus may experience pain by 18 weeks gestation.[3] Similarly, medical literature that post-

---

[3] *See, e.g.*, Myers LB, Bulich LA, Hess, P, Miller, NM. Fetal endoscopic surgery: indications and anaesthetic management. Best Practice & Research Clinical Anaesthesiology. 18:2 (2004) 231-258; Derbyshire SW, Foetal pain? Best Practice & Research Clinical Obstetrics and Gynaecology 24:5 (2010) 647-655; Brusseau R. Developmental Perspectives: is the Fetus Conscious? International Anesthesiology Clinics. 46:3 (2008) 11-23; and Mark D. Rollins, Mark A. Rosen, "Anesthesia for Fetal Intervention and Surgery", in Gregory's Pediatric Anesthesia,

dates *Casey* describes how the risk of death to women seeking an abortion increases the longer into pregnancy the abortion is performed.[4]

HB 136, like the federal partial birth abortion ban, serves a valid governmental purpose that does not impose an undue burden on a woman seeking an abortion. HB 136 precludes abortion after the gestational age at which a fetus is likely to experience severe pain and at which risks to maternal health are rising, while allowing access to abortion before 18 weeks. Neither *Casey* nor the Tenth Circuit in *Jane L*. had access to the growing body of medical literature to which policy makers today have access.

> C. *Plaintiff possesses relevant information that is subject to discovery*

As one of the abortion providers in Utah and a party to this case, Plaintiff has discoverable information about fetal development, including fetal pain, as well as the risks to maternal health for abortions provided later in pregnancy. Indeed, in the Declaration of Dr. David Turok, filed in support of Plaintiff's Motion for Preliminary Injunction, Dr. Turok states, "[A]t or after 18 weeks of pregnancy, health risks associated with abortion do rise with gestational age." *See* Declaration of David Turok, M.D. in Support of Plaintiff's Motion for a Preliminary Injunction, ¶ 26.

---

ed. George A. Gregory & Dean B. Adropoulos (West Sussex: Wiley-Blackwell, 2012), 444–474, 465.

[4] *See, e.g.*, L. Bartlett et al., *Risk Factors for Legal Induced Abortion Related Mortality in the United States*, 103:4 OBS &GYN. 729-737 (2004)(finding that "[t]he risk of death increased exponentially by 38% for each additional week of gestation. Compared with women whose abortions were performed at or before 8 weeks of gestation, women whose abortions were performed in the second trimester were significantly more likely to die of abortion-related causes").

In addition to information Plaintiff may possess regarding fetal pain and maternal health, the State is entitled to verify through discovery information that forms the basis of Plaintiff's assertions that it performs post 18-week abortions as well as information that documents the gestational ages at which Plaintiff performs abortions. Both matters are relevant. If Plaintiff does not perform post 18-week abortions, Plaintiff and its patients do not suffer any burden, let alone an undue one. Relatedly, the gestational age at which Plaintiff performs abortions speaks to whether a ban on post 18-week abortions is an undue burden. If Plaintiff's patients are aware of their pregnancies well before 18 weeks, then a post 18-week ban may be a burden, but not an *undue* burden.

IV.     **Plaintiff will not be prejudiced by allowing limited and proportional discovery**

Limited and proportional discovery serves the important judicial process of ensuring that all claims and defenses are fully vetted. The State is entitled to appropriate discovery and the opportunity to develop an adequate record not only to demonstrate its interests to this Court, but also to permit meaningful review by the appellate courts. Otherwise, the State will be unfairly prejudiced and denied a meaningful opportunity to raise its defenses—potentially creating another issue for appellate review.[5] This litigation involves issues of great public interest and it is important to public confidence in the judiciary that all relevant viewpoints are given due consideration by the court. Due consideration in this case includes allowing the litigants to conduct proportional discovery pursuant to Rule 26.

Further, because a stipulated preliminary injunction is already in place, Plaintiff suffers

---

[5] The issue of whether a state may conduct discovery regarding fetal pain and maternal health when defending against a challenge to its pre-viability abortion prohibition is currently pending before the Fifth Circuit. *See Jackson Women's Health Org. v. Dobbs*, Case No. 18-60868 (5th Cir.).

no harm by permitting discovery. Allowing a few months to conduct discovery will have no impact on Plaintiff, or the women who receive its services, because HB 136 will not be enforced during the pendency of this case. But precluding discovery will greatly prejudice the State by preventing it from gathering evidence necessary to fully present its defenses to this Court and make a complete record for reviewing appellate courts.

DATED: May 3, 2019.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Lance Sorenson
LANCE SORENSON
DAVID N. WOLF
*Counsel for State Defendants*

# CERTIFICATE OF MAILING

I certify that on **May 3, 2019**, I electronically filed the foregoing, **MOTION TO ALLOW PROPORTIONAL DISCOVERY AND MEMORANDUM IN SUPPORT THEREOF**, using the Court's electronic filing system and I also certify that a true and correct copy of the foregoing was sent by email and United States mail, postage prepaid, to the following:

Leah Farrell
John Mejia
American Civil Liberties Union of Utah Foundation, Inc.
355 N. 300 W.
Salt Lake City, UT 84103
lfarrell@acluutah.org
jmejia@acluutah.org

Jennifer Sandman
Planned Parenthood Federation of America
123 William Street, 9th Floor
New York, NY 10038
jennifer.sandman@ppfa.org

Julie Murray
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
julie.murray@ppfa.org

Darcy Goddard
Office of the Salt County District Attorney
35 East 500 South
Salt Lake City, Utah 84111
Dgoddard@slco.org

                                                         */s/ Mohamed I. Abdullahi*
                                                         Legal Secretary