DAVID N. WOLF (6688)
LANCE SORENSON (10684)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: lancesorenson@agutah.gov

*Counsel for State Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD ASSOCIATION OF UTAH,<br><br>Plaintiff,<br>v.<br>JOSEPH MINER, et al.<br><br>Defendants. | **STATE DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY**<br><br>Case No. 2:19-cv-00238<br><br>Judge Clark Waddoups |

There is no constitutional right to *perform* an abortion. *Harris v. McRae*, 448 U.S. 297, 317-18, n. 21 (1980). Here, Plaintiff's only claim is that HB136 violates the constitutional right of non-parties to *obtain* an abortion and Plaintiff is harmed thereby. *See* Compl., ¶ 36. Although Plaintiff alleges an injury-in-fact because HB136 targets its doctors who perform abortions, Plaintiff's claim is wholly derivative of its patients who are not parties to this lawsuit. Thus, Plaintiff seeks relief from this Court under the third-party standing doctrine. The Supreme Court is currently considering a case in which it was asked to reexamine the third party standing

doctrine as it pertains to abortion providers and provide greater clarity for lower courts to follow. The prudent course for this Court to follow would be to wait for that greater clarity. The Supreme Court could rule in any one of a number of different ways that would affect this case. Plaintiff suffers absolutely no harm by waiting because HB136 is preliminarily enjoined. On the other hand, denying the State Defendants' Motion to Stay means that all parties, and the Court, would continue to expend time and resources on a case that may become subject to dismissal in seven months because Plaintiff lacks standing.

## I. The *June Medical* case is directly relevant to this case

Plaintiff argues that resolution of the issues involved in *June Medical* are not relevant to this case. *See* Pl. Opp. Mot. to Stay, p. 8. In *June Medical*, the Supreme Court has been asked to clarify and reevaluate whether abortion providers have third-party standing to assert claims on behalf of people who are not parties to the litigation.[1] Here, Plaintiff's only asserted claim – that HB136 violates a woman's right to choose – is made on behalf of parties who are not present to the litigation. If the Supreme Court rules that abortion providers do not have third-party standing to assert constitutional claims on behalf of patients, then Plaintiff here will be precluded from asserting its sole claim.

Plaintiff argues that the question presented for the Supreme Court's review in *June Medical* only asks the Court to consider third party standing in the context of health and safety regulations where the interest of the abortion provider and his patient do not align, suggesting that even if the Court ruled that abortion providers do not have third party standing to assert constitutional claims regarding health and safety regulations, they will nevertheless have third

---

[1] *See* Louisiana Cross Petition, Doc. #60, State Defendants' Mot. to Stay, Exhibit A, p i.

party standing to challenge other abortion regulations.  Pl. Opp. Mot. to Stay, p. 7-8.  The State's response is two-fold.

     First, the petition before the Supreme Court asks for a broad reevaluation of the third party standing as it pertains to abortion providers, including an examination of the question of whether abortion providers have a "close" relationship with their patients and whether there is truly a "hindrance" to women in asserting abortion-rights claims themselves. *See* Louisiana Cross Petition, Doc. #60, Exhibit A, pp. 14-15.  The Supreme Court could reach any one of a number of conclusions in its opinion. It could adopt reasoning similar to that found in *Kowalski v. Tesmer*,[2] and hold that *no* abortion provider can assert third party standing to challenge abortion regulations. It could hold that abortion providers can challenge some regulations but not others.  Or it could rule that lower courts have been correctly applying *Singleton v. Wulff*, 428 U.S. 106 (1976).  The prudent course of action for this Court would be to wait to see how the Court rules.

     Second, even if the Court rules that abortion providers may continue to assert third-party claims where their interests are aligned with those of their patients, evidence gathered in this case suggests those interests are not aligned when it comes to HB136, which protects women's health from the complications that arise in late-term abortions.  Two of the State's experts have provided opinions demonstrating that both the physical and psychological complications associated with abortion rise after 18 weeks gestations. *See* Exhibit B, *Expert Report of Dr. Priscilla Coleman*, ¶ 77 (noting that "scores of empirically sound studies from across the world have definitively shown that abortion is a significant risk factor for post abortion mental health

---

[2] 543 U.S. 125 (2004).

problems and as gestational age advances, the level of risk increases" and "[o]nce [HB136] goes into effect, women of Utah will be less likely to suffer from post-abortion mental health problems"). A copy of Dr. Coleman's Expert Report is attached hereto as Exhibit A. *See also* Expert Report of Dr. Byron Calhoun, ¶ 42 and summary ("The frequency of complications increases in later gestational ages due to inherently greater technical complexity related to the anatomical and physiologic changes that occur as the pregnancy advances" and "**HB136 provides the necessary *health* protection for the women of Utah due induced abortion**") (emphasis added). A copy of Dr. Calhoun's Expert Report is attached hereto as Exhibit B. Plaintiff's own expert witness has testified that "at or after 18 weeks of pregnancy, health risks associated with abortion do rise with gestational age." *See* Doc. # 12, Decl. of Dr. David Turok, Exhibit A to Pl. Mot. for Prelim. Inj., ¶ 26. Evidence gathered in this case supports the contention that HB136 *is* a health and safety regulation. Thus, if the Supreme Court rules that abortion providers do not have third party standing to challenge health and safety regulations, then Plaintiff here would not have third party standing.

## II. Even if Plaintiff has *Article III* standing, if it lacks *prudential* standing, the result is the same – Plaintiff's claim must be dismissed

Plaintiff argues that whatever the result of *June Medical*, it will not speak to this Court's Article III jurisdiction because *June Medical* involves only questions of prudential standing. However, even if this Court's Article III jurisdiction is not implicated by *June Medical*, if Plaintiff's lack prudential standing, then the case must be dismissed. *See The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162 (10th Cir. 2011) (directing dismissal of Plaintiff's claims where Plaintiff lacked prudential standing). In *June Medical*, Cross Petitioner Louisiana also asks the Court to resolve a circuit-split on whether arguments regarding prudential standing are

4

waivable and encourages the Court to adopt the position that prudential standing speaks to the courts' jurisdiction just as Article III standing does.  *See* Louisiana Cross Pet., Exhibit A, Mot. to Stay, pp. 32-35.  That the Supreme Court is considering this question is yet another reason to stay this case to ensure this Court has jurisdiction.

### III. Plaintiff suffers no prejudice or harm if the Court grants the stay

The Court has preliminarily enjoined HB136 pursuant to the stipulation of the parties. Doc. #34. Plaintiff argues that the parties and, presumably, the Court should nevertheless go about "finishing what they have started." Pl. Opp. to Mot. to Stay, p. 9.  Such a course of action would not be an efficient use of the parties' or Court's time and resources.  A stay would put a temporary stop to the "process that has already consumed hundreds of hours of time" and would consume hundreds of hours of more time before the Supreme Court reaches a decision in *June Medical*, *id*.  A far more reasonable and prudent course of action would be to let the Supreme Court sort out the prudential standing doctrine as it applies to abortion providers.  Depending on the Supreme Court's ruling, this case may need to be dismissed for lack of standing.  If so, it will have been a waste of time and money to litigate during the pendency of *June Medical*.  If, on the other hand, the Supreme Court rules in such a way that Plaintiff in this case may continue to assert third party claims, then there will be no harm or prejudice.  The parties would continue where they left off.  HB136 is enjoined so Plaintiff can continue its operations during the stay without fear of prosecution under the law.

Plaintiff argues that the parties should go ahead with time consuming expert depositions, summary judgment motions, responses, replies and oral arguments, even if they would all be for naught.  Pl. Opp. Mot. to Stay, p. 9-10.  However, this approach is inconsistent with the goals of

5

the Federal Rules of Civil Procedure, which is to "to secure the just, speedy, and *inexpensive* determination of every action.  FED. R. CIV. P. 1 (emphasis added).

### IV.     The Supreme Court's decision to grant a writ of certiorari in *June Medical* triggers the need for the stay, not Louisiana's petition or Utah's amicus brief

Plaintiff argues that the State should have "connect[ed]" this case to *June Medical* when Louisiana's petition was filed in May or when the State joined an amicus brief in support of Louisiana's petition in June.  Pl. Opp. to Mot. to Stay, p. 8.  Plaintiff says this "provides strong evidence that *June Medical* is simply not relevant." *id*. The Supreme Court receives between 7,000 and 8,000 petitions for writs of certiorari each year.[3]  The Supreme Court typically grants about 80 writs of certiorari, or about 1 percent.[4]  Plaintiff effectively argues that the State should have asked for a stay in this case while Louisiana's petition was pending, not knowing whether the Supreme Court would grant the petition or not, even though the chances for a grant were about 1 percent.  A decision to ask for a stay at that point would have been too speculative of the Supreme Court's interest in the question.  When Louisiana filed the cert petition, there was nothing to suggest that the Court was likely to grant the petition.  However, now that the petition has been granted, this Court can be assured that the Supreme Court is engaged with and actively considering the question of third party standing for abortion providers, which directly bears on this case.  It is no longer speculative.  Contrary to the Plaintiff's assertions, the timing of the State's request for a stay is unrelated to the question of whether *June Medical* is relevant to the case at hand.

---

[3] *See* "The Justices' Caseload" at https://www.supremecourt.gov/about/justicecaseload.aspx.
[4] *Id*.

Staying the proceedings in this case until such time as the Supreme Court issues an opinion in *Gee v. June Medical* is a prudent course of action because it avoids wasting judicial and party resources on a case that may be dismissed, depending on the Supreme Court's ruling. Further, Plaintiff is not be harmed by a stay in this case because the injunction that is already in place would remain in place during the pendency of the stay.

For the foregoing reasons, State Defendants respectfully request that the Court grant the motion to stay these proceedings until such time as the Supreme Court issues its opinion in *Gee v. June Medical*.

DATED:  November 15, 2019.

                                    OFFICE OF THE UTAH ATTORNEY GENERAL

                                    /s/ Lance Sorenson
                                    LANCE SORENSON
                                    DAVID N. WOLF
                                    *Counsel for State Defendants*

## CERTIFICATE OF MAILING

I certify that on **November 15, 2019**, I electronically filed the foregoing, **STATE DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY**, using the Court's electronic filing system and I also certify that a true and correct copy of the foregoing was sent by e-mail, to the following:

Leah Farrell
John Mejia
AMERICAN CIVIL LIBERTIES UNION
OF UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, UT 84103
lfarrell@acluutah.org
jmejia@acluutah.org

Julie Murray
PLANNED PARENTHOOD
FEDERATION OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
julie.murray@ppfa.org

Jennifer Sandman
PLANNED PARENTHOOD
FEDERATION OF AMERICA
123 William Street, 9th Floor
New York, NY 10038
jennifer.sandman@ppfa.org

Darcy Goddard
OFFICE OF THE SALT COUNTY
DISTRICT ATTORNEY
35 East 500 South
Salt Lake City, Utah 84111
Dgoddard@slco.org

          */s/ Genevieve De La Pena*
          Legal Secretary
          Utah Attorney General's Office