John Mejia (Bar No. 13965)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, UT 84103
(801) 521-9862
(801) 532-2850 (fax)
jmejia@acluutah.org


*Attorneys for Plaintiff*
*Planned Parenthood Association of Utah*

*Admitted pro hac vice*

Julie Murray*
Hannah Swanson*
PLANNED PARENTHOOD FEDERATION
OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
(202) 803-4045
(202) 296-3480 (fax)
julie.murray@ppfa.org
hannah.swanson@ppfa.org

Jennifer Sandman*
Hana Bajramovic*
PLANNED PARENTHOOD FEDERATION
OF AMERICA
123 William Street, 9th Floor
New York, NY 10038
(212) 261-4584
(212) 247-6811 (fax)
jennifer.sandman@ppfa.org
hana.bajramovic@ppfa.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD ASSOCIATION OF UTAH, on behalf of itself and its patients, physicians, and staff, | Case No. 2:19-cv-00238 |
| Plaintiff, | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |
| v. | |
| RICHARD SAUNDERS, in his official capacity as Interim Executive Director of the Utah Department of Health, *et al.*, | Hon. Clark Waddoups |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION AND REQUEST FOR RELIEF ................................................. 1

BACKGROUND ................................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 4

A.    Access to Abortion Under Existing Utah Law ................................... 4

B.    PPAU's Abortion Patients ................................................................. 5

C.    The Impact of HB 136 ..................................................................... 11

ARGUMENT ..................................................................................................... 14

I.    Utah's Previability Abortion Ban Is Unconstitutional as a Matter of Law...................... 15

II.   The Undue Burden Standard Does Not Apply, But Even If It Did, HB 136 Would Still
      Be Unconstitutional ........................................................................ 20

CONCLUSION................................................................................................... 21

CERTIFICATE OF SERVICE ............................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                    *Page(s)*

*Bones v. Honeywell Int'l, Inc.*,
   366 F.3d 869 (10th Cir. 2004) ..................................................................... 14

*Bryant v. Woodall*,
   363 F. Supp. 3d 611 (M.D.N.C. 2019) .................................................. 17, 20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................... 14

*Edwards v. Beck*,
   786 F.3d 1113 (8th Cir. 2015) ............................................................... 17, 20

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
   No. 3:19-cv-178-DJH, 2019 WL 1233575 (W.D. Ky. Mar. 15, 2019) ........... 18

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
   962 F.2d 1366 (9th Cir. 1992) ....................................................................... 17

*Hasan v. AIG Prop. Cas. Co.*,
   935 F.3d 1092 (10th Cir. 2019) ..................................................................... 14

*Isaacson v. Horne*,
   716 F.3d 1213 (9th Cir. 2013) ............................................................... 17, 20

*Jackson Women's Health Org. v. Dobbs*,
   945 F.3d 265 (5th Cir. 2019) ........................................................................ 17

*Jackson Women's Health Org. v. Dobbs*,
   951 F.3d 246 (5th Cir. 2020) ........................................................................ 17

*Jane L. v. Bangerter*,
   102 F.3d 1112 (10th Cir. 1996) ......................................................... 1, 16, 21

*Jane L. v. Bangerter*,
   809 F. Supp. 865 (D. Utah 1992) .................................................................. 16

*June Med. Servs., LLC v. Russo*,
   140 S. Ct. 2103 (2020) ............................................................................. 4, 15

*Little Rock Family Planning Servs. v. Rutledge*,
   397 F. Supp. 3d 1213 (E.D. Ark. Aug. 6, 2019) .......................................... 17

*McCormack v. Herzog*,
    788 F.3d 1017 (9th Cir. 2015) ........................................................................ 17

*Memphis Ctr. for Reprod. Health v. Slatery*,
    No. 3:20-cv-00501, 2020 WL 4274198 (M.D. Tenn. July 24, 2020) .............................. 17

*MKB Mgmt. Corp. v. Stenehjem*,
    795 F.3d 768 (8th Cir. 2015) .......................................................................... 17

*Planned Parenthood of Se. Pa. v. Casey*,
    505 U.S. 833 (1992) ....................................................................... 15, 16, 19, 20

*Preterm-Cleveland v. Yost*,
    394 F. Supp. 3d 796 (S.D. Ohio 2019) ............................................................. 17

*Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Parson*,
    389 F. Supp. 3d 631 (W.D. Mo. 2019) ............................................................. 18

*Robinson v. Marshall*,
    415 F. Supp. 3d 1053 (M.D. Ala. 2019) ........................................................... 17

*Roe v. Wade*,
    410 U.S. 113 (1973) ............................................................................. *passim*

*SisterSong Women of Color Reprod. Justice Collective v. Kemp*,
    No. 1:19-cv-02973-SCJ, 2020 WL 3958227 (N.D. Ga. July 13, 2020) ...................... 17

*Sojourner T. v. Edwards*,
    974 F.2d 27 (5th Cir. 1992) .......................................................................... 17

*Stenberg v. Carhart*,
    530 U.S. 914 (2000) .................................................................................... 16

*Whole Woman's Health v. Hellerstedt*,
    136 S. Ct. 2292 (2016) ............................................................................ 16, 20

*Young v. NPAS, Inc.*,
    361 F. Supp. 3d 1171 (D. Utah 2019) ............................................................. 14

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1 ................................................................. 3, 15, 16, 21

**Statutes and Legislation**

Utah Code Ann. § 26-21-11 ................................................................................. 3

Utah Code Ann. § 58-1-202 ................................................................................... 3

Utah Code Ann. § 58-1-401 ................................................................................... 3

Utah Code Ann. § 58-1-501 ................................................................................... 3

Utah Code Ann. § 76-3-203 ................................................................................... 3

Utah Code Ann. § 76-3-301 ................................................................................ 2, 3

Utah Code Ann. § 76-7-302 ............................................................................. 1, 2, 3

Utah Code Ann. § 76-7-302.5 ................................................................................ 2

Utah Code Ann. § 76-7-305 ................................................................................. 10

Utah Code Ann. § 76-7-313 ................................................................................... 2

Utah Code Ann. § 76-7-314 ................................................................................... 3

Utah H.B. 136 (2019) .................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 25(d) ............................................................................................ 4

Fed. R. Civ. P. 56(a) .......................................................................................... 14

## INTRODUCTION AND REQUEST FOR RELIEF

Decades of unbroken precedent hold that states may not ban previability abortion. Utah's H.B. 136 ("HB 136" or "the Act") bans nearly all abortions at and after 18 weeks of pregnancy, though it is undisputed that no pregnancy is viable at 18 weeks. Accordingly, Plaintiff Planned Parenthood Association of Utah ("PPAU"), Utah's only general provider of previability abortion at and after 18 weeks of pregnancy, moves for summary judgment on its claim that HB 136 is unconstitutional as a matter of law.

In nearly five decades since the U.S. Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), no court has upheld a previability abortion ban. Indeed, the U.S. Court of Appeals for the Tenth Circuit invalidated an earlier Utah law that banned abortions at and after 22 weeks of pregnancy. *See Jane L. v. Bangerter*, 102 F.3d 1112 (10th Cir. 1996). As then, by passing HB 136, Utah has made a "deliberate decision to disregard controlling Supreme Court precedent" by banning previability abortion in hopes of "provid[ing] a vehicle by which to challenge *Roe v. Wade*." *Id.* at 1116–17.

Without permanent injunctive relief blocking the Act's enforcement, PPAU's patients will be denied their constitutional right to access safe and legal previability abortion in Utah. They will instead be forced to carry pregnancies to term against their will or, if they are able, to travel hundreds of miles to providers in other states, at significant personal and financial cost. Summary judgment is required by binding precedent to protect these patients' health and rights.

## BACKGROUND

In Utah, abortion is generally legal only before fetal viability. Utah Code Ann. § 76-7-302(3)(a). Utah defines viability to mean that the fetus "is potentially able to live outside the womb,

1

as determined by the attending physician to a reasonable degree of medical certainty." *Id.* § 76-7-302(1). Plaintiff does not challenge this prohibition on postviability abortions. While each pregnancy is different, viability generally does not occur until at least the 24th week of pregnancy, as measured from the first day of the patient's last menstrual period ("LMP").

In March 2019, the Utah Legislature passed HB 136, which amends Utah code to provide that, notwithstanding other state statutory provisions on the availability of abortion, "a person may not perform or attempt to perform an abortion" after a fetus "reaches 18 weeks gestational age." HB 136, § 3 (creating Utah Code Ann. § 76-7-302.5) (hereinafter, "the 18-week ban"). The Act measures gestational age from the first day of the pregnant woman's last menstrual period—that is, by LMP. *Id.* § 1 (amending Utah Code Ann. § 76-7-301(5)).

The 18-week ban is subject only to the exceptions included in Utah's existing, unchallenged prohibition on postviability abortions. Those exceptions permit abortions necessary (1) to save a patient's life; (2) to prevent a serious risk of substantial and irreversible impairment of a major bodily function; (3) to end a pregnancy resulting from rape or incest, but only where the providing physician verifies that the crime has been reported to law enforcement; and (4) to end a pregnancy involving a "uniformly diagnosable" and "uniformly lethal" fetal anomaly or "severe [fetal] brain abnormality." *Id.* § 2; Utah Code Ann. § 76-7-302(3)(b).

To ensure compliance with the 18-week ban, HB 136 also imposes new reporting mandates. It requires physicians who perform abortions to certify to the Utah Department of Health ("UDOH") whether, at the time of each abortion, the pregnancy was past 18 weeks LMP. HB 136, § 4. And as existing law already requires for postviability abortions, *see* Utah Code Ann. § 76-7-313(2), HB 136 requires physicians performing abortions after 18 weeks to report to UDOH "the

reason for [each such] abortion" in order to ensure that one of the exceptions to the ban applies,

HB 136, § 4.

Violating the 18-week ban triggers stiff criminal penalties. Performing an abortion after 18 weeks LMP constitutes a second-degree felony, which carries a minimum one-year and maximum fifteen-year prison term. *Id.* § 5 (amending Utah Code Ann. § 76-7-314); Utah Code Ann. § 76-3-203. Violations of the 18-week ban also carry up to a $20,000 criminal fine for nonprofit corporations, and a $10,000 fine for individual staff. Utah Code Ann. §§ 76-3-301(1)(a), 76-3-302(1).

Additionally, violations of the 18-week ban may trigger license revocation for clinics and physicians. The Act mandates that UDOH report a doctor who violates the ban to Utah's Physician and Surgeon Licensing Board. HB 136, § 5 (amending Utah Code Ann. § 76-7-314(5)). That board in turn recommends licensing actions to the Utah Division of Occupational and Professional Licensing, Utah Code Ann. § 58-1-202(1)(d), which is authorized to revoke a physician's license for "unprofessional conduct," *id.* § 58-1-401(2); *see also id.* § 58-1-501(2). The Act also authorizes UDOH to take action against a facility licensed as an "abortion clinic" if a violation of the 18-week ban occurs onsite. *Id.* § 76-7-314(7). Such action includes license revocation where the clinic "permit[s], aid[s], or abet[s] the commission of any illegal act in the . . . facility." *Id.* § 26-21-11.

Shortly after HB 136's passage, on behalf of itself, its patients, and its physicians, PPAU sued the Utah state officials responsible for enforcing these provisions (collectively, "State Defendants"), seeking declaratory and injunctive relief under the Fourteenth Amendment to the

U.S. Constitution.[1] In April 2019, State Defendants stipulated to a preliminary injunction blocking enforcement of HB 136 pending resolution of this litigation. Salt Lake County District Attorney Sim Gill, sued because of his prosecutorial authority in the county where PPAU provides abortions, also stipulated to a preliminary injunction. In December 2019, this Court stayed proceedings pending the U.S. Supreme Court's resolution of *June Medical Services, LLC v. Russo*, 140 S. Ct. 2103 (2020). After the Supreme Court's June 2020 decision in *June Medical Services*, the Court lifted its stay. The parties completed discovery in September 2020.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.    Access to Abortion Under Existing Utah Law**

1.    Plaintiff Planned Parenthood Association of Utah ("PPAU") is a nonprofit corporation that provides comprehensive reproductive health care, including previability abortion up to and after 18 weeks LMP. App. of Evidence in Supp. of Pl.'s Mot. for Summ. J. ("SJ App.") 5, 9 (Decl. of David Turok in Support of Pl.'s Mot. for Summ. J. ("Turok Decl.") ¶¶ 13–16, 28); SJ App. 86 (State Defs.' Resps. to Pl.'s First Set of Disc. Reqs. ("Defs.' Resps."), Req. for Admis. No. 5); SJ App. 130, 131, 136 (Tr. of Sept. 17, 2019, Dep. of Laurie Baksh ("Baksh Dep.") at 77:11–23, 78:13–24, 83:4–8).

2.    While each pregnancy is different, no fetus is viable at 18 weeks, as measured from the first day of the patient's last menstrual period ("LMP"). SJ App. 9 (Turok Decl. ¶ 28); SJ App. 85–86 (Defs.' Resps., Req. for Admis. Nos. 1, 2); SJ App. 87–88 (Defs.' Resps., Interrog.

---

[1] Since PPAU filed its lawsuit, Defendant Joseph Miner has been replaced by Richard Saunders, Interim Director of the Utah Department of Health. Under Federal Rule of Civil Procedure 25(d), Mr. Saunders is automatically substituted as a defendant in this case in his official capacity.

No. 1); SJ App. 184 (Decl. of Linda Wininger ¶¶ 12–15); SJ App. 352 (State Defs.' Resps. to Pl.'s Second Set of Disc. Reqs. ("Defs.' 2d Resps."), Req. for Admis. No. 16); SJ App. 169–73, 175 (Baksh Dep. at 165:14–166:20, 167:5–9, 168:24–169:11, 171:1–14).

3.     PPAU provides abortion only at its Metro Health Center in Salt Lake City. SJ App. 5 (Turok Decl. ¶ 16); SJ App. 130–31 (Baksh Dep. at 77:11–23, 78:13–24).

4.     PPAU's Metro Health Center is licensed by the Utah Department of Health as an abortion clinic authorized to perform first- and second-trimester abortions. SJ App. 5 (Turok Decl. ¶ 16); SJ App. 86 (Defs.' Resps., Req. for Admis. No. 3).

5.     PPAU's Director of Surgical Services provides previability abortion at and after 18 weeks of pregnancy at PPAU. SJ App. 3–4 (Turok Decl. ¶ 9); SJ App. 133–35 (Baksh Dep. 80:22–25, 81:3–10, 82:12–15). He is a board-certified obstetrician-gynecologist who is licensed to practice medicine in the State of Utah. SJ App. 2 (Turok Decl. ¶ 5); SJ App. 86 (Defs.' Resps., Req. for Admis. No. 4).

6.     PPAU's Metro Health Center is the only clinic in the entire state providing generally available abortion at and after 18 weeks LMP. SJ App. 5 (Turok Decl. ¶ 16); SJ App. 355–56 (Defs.' 2d Resps., Interrog. No. 14); SJ App. 130–31, 136 (Baksh Dep. at 77:11–23, 78:13–24, 83:4–8).

**B.     PPAU's Abortion Patients**

7.     PPAU provides compassionate, individualized care to patients who seek abortion at its Metro Health Center, many of whom have previously relied on PPAU for other health care needs before coming to PPAU for abortion. SJ App. 6, 10 (Turok Decl. ¶¶ 17, 30).

8.      Half of PPAU's abortion patients already have children. SJ App. 9–10 (Turok Decl. ¶ 29).

9.      The vast majority of PPAU's patients (88% in 2019) report living in poor or low-income households. SJ App. 11 (Turok Decl. ¶ 33); *see also* SJ App. 196 (Decl. of Colleen Heflin ("Heflin Decl.") ¶ 30).

10.     In 2020, the federal poverty level for a one-person household is $12,760 per year, or $1,063 per month. SJ App. 192 (Heflin Decl. ¶ 19). For a two-person household, the 2020 federal poverty level is $17,240 per year, or $1,436 per month. SJ App. 192 (Heflin Decl. ¶ 19).

11.     A person working full-time, year-round at Utah's prevailing minimum wage of $7.25 per hour would have an annual gross income of $15,080, or $1,256 per month. SJ App. 197 (Heflin Decl. ¶ 32).

12.     A person who lives in a household with an income below the federal poverty level is considered "poor." SJ App. 192 (Heflin Decl ¶ 19).

13.     A person who lives in a household with an income below 200% of the federal poverty level is considered "low-income."  SJ App. 194 (Heflin Decl. ¶ 24).

14.     Poor and low-income women face higher odds of having an unintended pregnancy and abortion as compared to more affluent women, who have better access to health care services and contraception. SJ App. 195 (Heflin Decl. ¶¶ 27–28).

15.     PPAU's patients decide to have abortions for a variety of reasons, and often for more than one reason at once. SJ App. 9–10 (Turok Decl. ¶ 29).

16.     Some patients decide to have an abortion because they struggle with basic unmet needs for their existing children. SJ App. 9–10 (Turok Decl. ¶ 29).

17.    Other patients decide that they are not ready to become parents because of their age or because they want to complete their education before starting a family. SJ App. 9–10 (Turok Decl. ¶ 29).

18.    Some patients have health complications during pregnancy and seek abortion to preserve their own health. SJ App. 9–10 (Turok Decl. ¶ 29).

19.    Other patients are referred to PPAU by genetic counselors or other doctors after making the difficult decision to end a wanted pregnancy because of a fetal medical diagnosis. SJ App. 9–10 (Turok Decl. ¶ 29).

20.    In some cases, patients are struggling with opioid or other drug addiction and decide not to become parents during that struggle. SJ App. 9–10 (Turok Decl. ¶ 29).

21.    Other patients have abusive partners and fear being connected to that person for life through a shared child. SJ App. 9–10 (Turok Decl. ¶ 29).

22.    Patients generally try to access abortion as early in their pregnancy as they are able, but in practice numerous barriers can cause delay. SJ App. 10 (Turok Decl. ¶ 31); SJ App. 197–208 (Heflin Decl. ¶¶ 34–55); SJ App. 149–52 (Baksh Dep. at 96:21–97:25, 98:21–99:7); *cf.* SJ App. 114–16, 144–48, 151 (Baksh Dep. at 20:15–22:3, 91:11–93:9, 94:10–95:13, 98:6–20).

23.    A patient may not realize that she is pregnant for many weeks or even months, particularly if she has irregular menstrual cycles. SJ App. 10 (Turok Decl. ¶ 31); SJ App. 145–46, 154 (Baksh Dep. at 92:14–93:3, 101:13–22).

24.    A patient may experience several additional weeks of delay while she confirms the pregnancy, researches her options, decides to seek an abortion, contacts PPAU, and schedules an initial appointment with a PPAU health center. SJ App. 10 (Turok Decl. ¶ 31).

25.     Some patients also need time to figure out how to pay for an abortion, as well as for associated costs such as transportation, missed work, and childcare expenses. SJ App. 11 (Turok Decl. ¶ 33); SJ App. 197–208, 218 (Heflin Decl. ¶¶ 34–55, 76); SJ App. 149–52 (Baksh Dep. at 96:21–97:25, 98:21–99:7); *cf.* SJ App. 114–16, 144–49, 151, 163 (Baksh Dep. at 20:15–22:3, 91:11–93:9, 94:10–95:13, 95:14–96:20 (recognizing that Utah abortion providers are all located along the Wasatch Front and that there are "no providers and no facilities in other parts of the state"), 98:6–20, 159:11–18).

26.     Because the cost of abortion increases with gestational age, these financial hurdles intensify in the second trimester of pregnancy. SJ App. 198 (Heflin Decl. ¶¶ 35–36).

27.     Patients who work in low-wage jobs are likely to lack predictable work schedules, making it especially difficult to save for a medical expense, to schedule clinic appointments, and to arrange transportation and childcare in advance. SJ App. 190, 206, 218 (Heflin Decl. ¶¶ 16, 51, 76).

28.     Some patients may not be able to take multiple days off from work without jeopardizing their jobs. SJ App. 11 (Turok Decl. ¶ 34); SJ App. 206, 218 (Heflin Decl. ¶¶ 51, 76).

29.     In particular, patients who work in the service industries are unlikely to have access to paid time off work, such that they must take uncompensated time off work to attend medical appointments. SJ App. 190, 206 (Heflin Decl. ¶¶ 16, 51).

30.     Even patients who take unpaid time off work to attend an appointment may have to disclose to their employer why they are missing work, thus compromising the confidentiality of their decision to obtain an abortion. SJ App. 206 (Heflin Decl. ¶ 51).

31.     Some patients cannot obtain childcare for multiple days in a row without revealing to family or other caregivers the reason for their need, jeopardizing their confidentiality. SJ App. 11 (Turok Decl. ¶ 34); SJ App. 206–07 (Heflin Decl. ¶ 52).

32.     Because abortions at or after 16 weeks LMP typically require two separate appointments on consecutive days, most out-of-town patients obtaining abortions at PPAU at or after 16 weeks stay the night in Salt Lake City. SJ App. 11 (Turok Decl. ¶ 35).

33.     Due to this overnight stay, patients seeking abortion at or after 16 weeks LMP face additional challenges negotiating work schedules and childcare and assembling the resources needed to obtain an abortion. SJ App. 11 (Turok Decl. ¶ 35); SJ App. 205–07 (Heflin Decl. ¶¶ 50–52).

34.     For patients living below 200% of the federal poverty level, these financial and logistical barriers are especially problematic. SJ App. 11 (Turok Decl. ¶ 33); SJ App. 190, 203, 218 (Heflin Decl. ¶¶ 16, 45, 76); SJ App. 149–50, 163 (Baksh Dep. at 96:21–97:25, 159:11–18); *cf.* SJ App. 147–48, 151 (Baksh Dep. at 94:10–95:13, 98:6–20).

35.     To navigate financial barriers to health care, including abortion, low-income and poor women must forgo essential expenses such as food, utility payments, car payments, or rent. SJ App. 190, 199–200 (Heflin Decl. ¶¶ 16, 38–39).

36.     Similarly, poor and low-income women might delay appointments for health care, including abortion, because they need the money to pay for basic needs for themselves and their families. SJ App. 199–201 (Heflin Decl. ¶¶ 38–41).

37.     Some patients seek an abortion at or after 18 weeks because they discover a fetal anomaly through prenatal testing that generally cannot occur until 18 to 20 weeks LMP. SJ App. 12 (Turok Decl. ¶ 37).

38.     In some circumstances, the findings from this testing are inconclusive and necessitate referrals to other medical professionals and additional testing. SJ App. 12 (Turok Decl. ¶ 37).

39.     While this additional consultation helps ensure that patients are able to make the right decisions for themselves and their families based on the most accurate medical information available, it can further delay the point at which a patient decides to end a wanted pregnancy. SJ App. 12 (Turok Decl. ¶ 37).

40.     Other patients seek abortions at or after 18 weeks LMP because they have a medical condition that does not manifest itself, or does not worsen, until that time. SJ App. 12 (Turok Decl. ¶ 38).

41.     All of these individual circumstances can lead to further delays. SJ App. 11–12 (Turok Decl. ¶¶ 36, 37–38); SJ App. 218 (Heflin Decl. ¶ 76).

42.     Delays in abortion access are compounded by Utah's mandatory delay law, which requires patients to have an initial, medically unnecessary consultation with clinic staff to obtain state-mandated disclosures, and then to wait at least 72 hours before obtaining an abortion. SJ App. 10–11 (Turok Decl. ¶ 32); SJ App. 207–08 (Heflin Decl. ¶ 54); Utah Code Ann. § 76-7-305(2).

**C.      The Impact of HB 136**

43.      HB 136 bans abortion in Utah at and after 18 weeks LMP, subject to certain narrow exceptions. HB 136, § 3 (codified at Utah Code Ann. § 76-7-302.5); SJ App. 2 (Turok Decl. ¶ 3); SJ App. 86–87 (Defs.' Resps., Req. for Admis. No. 6); SJ App. 125 (Baksh Dep. at 72:8–23).

44.      If HB 136 takes effect, to avoid criminal penalties and the threat of license revocation, PPAU and its physicians and staff will be forced to stop providing nearly all previability abortion to patients at and after 18 weeks LMP. SJ App. 13 (Turok Decl. ¶ 39); SJ App. 88–89 (Defs.' Resps., Interrog. No. 3); SJ App. 140 (Baksh Dep. at 87:5–9).

45.      If HB 136 takes effect, PPAU will be forced to limit its abortion services to patients with pregnancies past 18 weeks LMP so that it provides abortions only where it can determine that one of the legal exceptions to the 18-week ban applies. SJ App. 13 (Turok Decl. ¶ 39); SJ App. 88–89 (Defs.' Resps., Interrog. No. 3).

46.      If HB 136 takes effect, it will deprive PPAU's patients of the freedom to make a very personal and nuanced decision in consultation with their families and their care providers. SJ App. 13 (Turok Decl. ¶ 40).

47.      This will harm patients' physical, emotional, and financial wellbeing and the wellbeing of their families. SJ App. 13, 15 (Turok Decl. ¶¶ 40, 46); SJ App. 212, 218–19 (Heflin Decl. ¶¶ 64, 75, 77).

48.      Without access to PPAU's services, some patients will be forced to travel hundreds of miles across state lines to try to access abortion at or after 18 weeks. SJ App. 13 (Turok Decl. ¶ 41); SJ App. 191, 208–10, 218–19, 243–44, 245–47 (Heflin Decl. ¶¶ 17, 56–60, 77; Heflin Decl. Ex. B; Heflin Decl. Ex. C).

49.     If abortion at and after 18 weeks LMP is no longer available in Utah, the distance to the nearest provider of abortion at and after 18 weeks LMP for patients in counties along the Wasatch Front—counties that contain more than 86 percent of Utah's total population—will increase by more than 300 miles each way.  SJ App. 191, 208–09, 243–44, 245–47 (Heflin Decl. ¶¶ 17, 57; Heflin Decl. Ex. B; Heflin Decl. Ex. C).

50.     Patients in Salt Lake County—which alone contains roughly 36 percent of the state's population—will experience an estimated additional travel distance of 393 miles each way to the nearest provider of abortion at and after 18 weeks of pregnancy. SJ App. 191, 218–19, 243–44 (Heflin Decl. ¶¶ 17, 77; Heflin Decl. Ex. B).

51.     Given the logistical hurdles associated with traveling out-of-state, patients forced by HB 136 to travel are likely to obtain abortions later than they would have had they accessed care at PPAU. SJ App. 13 (Turok Decl. ¶ 41); SJ App. 191 (Heflin Decl. ¶ 17); SJ App. 166–67 (Baksh Dep. at 162:23–163:4).

52.     In particular, this additional travel distance will delay abortion access for poor and low-income patients, who will have an especially hard time navigating the additional travel cost and logistical complexity. SJ App. 191, 208, 217–19 (Heflin Decl. ¶¶ 17–18, 56, 74, 77); SJ App. 166 (Baksh Dep. at 162:1–22).

53.     Because HB 136 would exacerbate existing financial and logistical barriers to abortion access for poor and low-income patients, those patients would be forced to make even greater trade-offs among other essential needs in order to access abortion in other states. SJ App. 208–19 (Heflin Decl. ¶¶ 56–57, 62–73, 77).

54.     By increasing logistical barriers to abortion access, HB 136 will jeopardize poor and low-income patients' employment, as well as the confidentiality of their decision to obtain an abortion. SJ App. 13 (Turok Decl. ¶ 41); SJ App. 191 (Heflin Decl. ¶ 17).

55.     For some patients, travel to another state will simply not be possible. As a result, these patients will be forced to carry unwanted pregnancies to term. SJ App. 14 (Turok Decl. ¶ 42; SJ App. 208 (Heflin Decl. ¶ 56); SJ App. 164–65 (Baksh Dep. at 160:12–161:21).

56.     HB 136 will have a particularly devastating impact on patients whose mental or physical wellbeing is threatened by continuing their pregnancies but whose conditions may not qualify for the health exception to the 18-week ban. SJ App. 14 (Turok Decl. ¶ 43).

57.     Such conditions may include those that do not manifest, or worsen, until at or after 18 weeks LMP, such as radically worsening diabetes or hypertension; a flare of an autoimmune disorder, such as lupus or Crohn's disease; neurologic conditions, such as severe, intractable migraines or an exacerbation of multiple sclerosis; or bodily trauma. SJ App. 12 (Turok Decl. ¶ 38).

58.     HB 136 will add to the anguish of patients and their families who receive certain fetal diagnoses later in pregnancy, where those diagnoses do not constitute conditions that are "uniformly diagnosable" and either a "lethal" anomaly or a "severe brain abnormality" and thus do not qualify for the fetal anomaly exception to the 18-week ban. SJ App. 14–15 (Turok Decl. ¶ 44).

59.     HB 136 will also bar abortion after 18 weeks LMP for survivors of rape and incest who, out of shame or fear, have not involved law enforcement or who do not wish to discuss the

circumstances of their pregnancy as a condition of obtaining a previability abortion. SJ App. 15 (Turok Decl. ¶ 45).

60.     Patients who are unable to obtain an abortion due to HB 136's 18-week ban will suffer the deprivation of their fundamental right to determine when and whether to have a child or to add to their existing families, as well as the physical, emotional, and financial consequences of carrying a pregnancy to term against their will. SJ App. 14, 15 (Turok Decl. ¶¶ 42, 46); SJ App. 218 (Heflin Decl. ¶ 75).

## ARGUMENT

Summary judgment is warranted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists 'unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable factfinder could return a verdict for the non-moving party.'" *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)). While the moving party bears the initial burden of showing an absence of evidence to support the non-moving party's case, "[o]nce the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Young v. NPAS, Inc*., 361 F. Supp. 3d 1171, 1182 (D. Utah 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

The only material facts in this case are uncontested: HB 136 bans abortion before viability and will prohibit PPAU and its physicians and staff from providing abortions to their patients, thus harming patients in a range of ways. Accordingly, it is clear from undisputed facts that HB 136

violates Utahns' right to decide whether to terminate a previability pregnancy and accordingly is unconstitutional. PPAU is entitled to summary judgment.

## I.   Utah's Previability Abortion Ban Is Unconstitutional as a Matter of Law

HB 136 is blatantly unconstitutional because it bans abortion at 18 weeks, before any pregnancy is viable. Nearly five decades ago, the Supreme Court held that the Due Process Clause of the U.S. Constitution's Fourteenth Amendment protects a woman's right to decide to have an abortion, *Roe*, 410 U.S. at 153–54, and that, prior to viability, a state has no interest sufficient to justify a ban on abortion, *id.* at 163–65. A state may "proscribe" abortion only *after* viability— and, even then, it may not ban abortion where necessary to preserve the patient's life or health. *Id.*

The Supreme Court has repeatedly adhered to that core holding. In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, the Court reaffirmed *Roe*'s "essential holding" that, "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion." 505 U.S. 833, 846 (1992). Although a plurality in *Casey* announced an "undue burden" standard, under which a law restricting previability abortion is invalid if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion, 505 U.S. at 878 (plurality opinion), the plurality emphasized:

> Our adoption of the undue burden analysis does not disturb the central holding of *Roe v. Wade*, and we reaffirm that holding. Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.

*Id.* at 879 (emphasis added); *see also id.* at 871 (stating that any state interest is "insufficient to justify a ban on abortions prior to viability even when it is subject to certain exceptions"). The Supreme Court applied *Roe* and *Casey* in invalidating an abortion restriction as recently as this summer. *See June Med. Servs.,* 140 S. Ct. at 2120, 2133 (plurality opinion); *id.* at 2135 (Roberts,

C.J., concurring); *see also, e.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016); *Stenberg v. Carhart*, 530 U.S. 914, 920–21 (2000) (declining to "revisit" the legal principle that "before 'viability . . . the woman has a right to choose to terminate her pregnancy'" (quoting *Casey*, 505 U.S. at 870)).

In addition, more than two decades ago, the Tenth Circuit relied on *Roe* and *Casey* to invalidate an earlier Utah law that banned abortions at 22 weeks LMP, subject to limited exceptions, such as to save the life of a pregnant woman.[2] The court of appeals held that the ban on previability abortions violated women's substantive due process rights under the Fourteenth Amendment. *Jane L.*, 102 F.3d at 1114. It concluded that the Utah Legislature, in adopting the law, had "made a deliberate decision to disregard controlling Supreme Court precedent . . . . evinc[ing] an intent to prevent a woman from exercising her right to choose" abortion before viability. *Id.* at 1116–17.[3] In striking down Utah's previability ban, the Tenth Circuit chastised the state for "its continued refusal to accept governing Supreme Court authority holding that viability is a matter to be determined by an attending physician, and that until viability is actually present the State may not prevent a woman from choosing to abort." *Id.* at 1118.

---

[2] Although the text of this earlier Utah law distinguished between abortions before and after 20 weeks of pregnancy, the law at that time dated pregnancy from conception as opposed to LMP. Because the latter calculation is how pregnancies are dated in the medical context, PPAU refers to gestational age by LMP throughout this memorandum. *See Jane L.*, 102 F.3d at 1114 n.3.

[3] This Court recognized that same principle to strike down a separate portion of the ban applicable to abortions *before* 22 weeks. *See Jane L.*, 102 F.3d at 1113. The state defendants did not appeal that ruling, *id.* at 1113–14, conceding in district court that the provision "appear[ed] to be unconstitutional" under *Casey*, *Jane L. v. Bangerter*, 809 F. Supp. 865, 870 (D. Utah 1992), *rev'd in part on other grounds*, 61 F.3d 1493 (10th Cir. 1995), *rev'd on other grounds sub nom. Leavitt v. Jane L.*, 518 U.S. 137 (1996).

Since *Roe*, every other court to assess the constitutionality of a statute banning previability abortion has invalidated that ban. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, 951 F.3d 246, 248 (5th Cir. 2020) (6-week ban); *Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 274, 277 (5th Cir. 2019) (15-week ban); *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 776 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 981 (2016) (6-week ban); *Edwards v. Beck*, 786 F.3d 1113, 1115 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 895 (2016) (12-week ban); *McCormack v. Herzog*, 788 F.3d 1017, 1029 (9th Cir. 2015) (equivalent of 22-week LMP ban); *Isaacson v. Horne*, 716 F.3d 1213 (9th Cir. 2013), *cert. denied*, 571 U.S. 1127 (2014) (20-week ban); *Sojourner T. v. Edwards*, 974 F.2d 27, 29, 31 (5th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993) (ban at all gestational ages); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1368–69 (9th Cir. 1992), *cert. denied*, 506 U.S. 1011 (1992) (ban at all gestational ages); *see also SisterSong Women of Color Reprod. Justice Collective v. Kemp*, No. 1:19-cv-02973-SCJ, 2020 WL 3958227, at *10–11 (N.D. Ga. July 13, 2020) (granting summary judgment to plaintiffs challenging Georgia law prohibiting abortions after detection of fetal heartbeat), *appeal docketed*, No. 20-13024 (11th Cir. Aug. 11, 2020); *Bryant v. Woodall*, 363 F. Supp. 3d 611, 630 (M.D.N.C. 2019) (permanent injunction against 20-week ban); *Robinson v. Marshall*, 415 F. Supp. 3d 1053, 1059 (M.D. Ala. 2019) (preliminary injunction against ban at all gestational ages); *Memphis Ctr. for Reprod. Health v. Slatery*, __F. Supp. 3d__, No. 3:20-cv-00501, 2020 WL 4274198 (M.D. Tenn. July 24, 2020) (not yet published), *appeal docketed*, No. 20-5969 (6th Cir. Aug. 24, 2020) (preliminary injunction against 6-week ban); *Preterm-Cleveland v. Yost*, 394 F. Supp. 3d 796, 804 (S.D. Ohio 2019) (preliminary injunction against 6-week ban); *Little Rock Family Planning Servs. v. Rutledge*, 397 F. Supp. 3d 1213, 1220–21 (E.D. Ark. Aug. 6, 2019) (preliminary injunction against 18-week ban),

*appeal docketed*, No. 19-2690 (8th Cir. Aug. 9, 2019); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 3:19-cv-178-DJH, 2019 WL 1233575, at *2 (W.D. Ky. Mar. 15, 2019) (unpublished) (temporary restraining order against 6-week ban); *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Parson*, 389 F. Supp. 3d 631 (W.D. Mo. 2019) (unpublished) (preliminary injunction against multiple gestational age bans starting at eight weeks), *appeals docketed*, Nos. 19-2882 & 19-3134 (8th Cir. Oct. 3, 2019).

There is no dispute in this case that HB 136 bans abortion before viability. PPAU has demonstrated through sworn expert testimony that no pregnancy is viable at 18 weeks LMP, the gestational age at and after which abortion is banned by HB 136. SJ App. 9 (Turok Decl. ¶ 28). State Defendants have not attempted to rebut that evidence through expert or other testimony, and in written discovery, State Defendants admitted they have no "evidence that a fetus is viable at 18 weeks of pregnancy LMP." SJ App. 85–86 (Defs.' Resps., Pl.'s Req. for Admis. No. 1). In deposition testimony, UDOH's 30(b)(6) representative also testified that no fetus is viable at 18 weeks of pregnancy. SJ App. 169–70, 172–73, 175 (Baksh Dep. at 165:14–166:20, 168:24–169:11, 171:1–14). And State Defendants' own data demonstrate that between 2016 and 2018, no fetus delivered in Utah in the eighteenth week of pregnancy has survived more than hours before death. SJ App. 87–88 (Defs.' Resps., Interrog. No. 1); SJ App. 184 (Decl. of Linda Wininger ¶¶ 12–15).

Nor do State Defendants dispute that PPAU provides abortions to patients at and after 18 weeks LMP (and indeed, that PPAU is the only general provider of such services in Utah), such that PPAU and its patients, providers, and staff will be harmed by HB 136 absent permanent injunctive relief. SJ App. 5 (Turok Decl. ¶ 16); SJ App. 86 (Defs.' Resps., Req. for Admis. No. 3–

5); SJ App. 355–56 (Defs.' 2d Resps., Interrog. No. 14); SJ App. 130–31, 136 (Baksh Dep. at

77:11–23, 78:13–24, 83:4–8).[4] PPAU has also demonstrated through sworn, undisputed testimony

the wide range of harms that its patients will experience if HB 136 takes effect, including that

patients seeking abortion will be forced to carry the pregnancy to term against their will or, if they

are able, to travel out of state to access abortion after 18 weeks LMP, all at great cost to these

patients' health, financial, and emotional interests. *See, e.g.*, SJ App. 10–15 (Turok Decl. ¶¶ 31–

38, 40–46); SJ App. 190–91, 197–219 (Heflin Decl. ¶¶ 16–18, 34–57, 62–77); SJ App. 140–41,

164–65 (Baksh Dep. at 87:15–20, 88:2–6, 160:12–161:21).[5]

Under binding precedent, the 18-week ban on previability abortion is facially

unconstitutional, no matter what interest State Defendants may assert to support it. *See Casey*, 505

U.S. at 846; *Roe*, 410 U.S. at 164–65. Accordingly, PPAU has more than demonstrated that it is

entitled to summary judgment on its substantive due process claim.

---

[4] Indeed, more than a year ago, PPAU's Director of Surgical Services, a board-certified obstetrician-gynecologist, addressed these facts in sworn testimony. He attested that a pregnancy is *never* viable at 18 weeks of pregnancy and that PPAU is the only general abortion provider in Utah that provides previability abortions at and after 18 weeks. SJ App. 251, 252 (Decl. of David Turok, M.D. in Supp. of Pl.'s Mot. for Prelim. Inj. ¶¶ 14, 18, ECF No. 12-1). At that stage of the litigation, State Defendants denied these critical facts in their answer, thereby averting judgment as a matter of law. As discovery revealed, however, UDOH, the state agency led by one of the Defendants, knew at that time that PPAU provided abortions at and after 18 weeks of pregnancy and that no pregnancy is viable at 18 weeks. *See* SJ App. 139, 172–73 (Baksh Dep. at 86:17–20, 168:24–169:11); SJ App. 287, 292–93 (Pl.'s Opp'n to State Defs.' Mot. to Take Prop. Disc. Ex. A, Decl. of Julio Castillo ("Castillo Decl.") ¶¶ 4–5, ECF No. 42-1; Castillo Decl. Ex. C).

[5] For example, for patients living in the Utah counties containing more than 86% of the state's population, these out-of-state clinics are more than 300 miles farther away than PPAU's Metro Health Center—an additional distance that patients will need to travel at least *twice* when making the trip to their abortion appointment and back. SJ App. 208–09, 243–47 (Heflin Decl. ¶ 57; Heflin Decl. Ex. B; Heflin Decl. Ex. C); *see also* SJ App. 191, 208–10, 218–19 (Heflin Decl. ¶¶ 17, 56–60, 77).

**II.     The Undue Burden Standard Does Not Apply, But Even If It Did, HB 136 Would Still Be Unconstitutional**

In their briefing to support discovery, State Defendants suggested that HB 136 is not subject to the categorical rule that a ban on previability abortion is unconstitutional. State Defs.' Mot. to Allow Limited Prop. Disc. & Mem. in Supp. Thereof ("Defs.' Disc. Mot.") at 3, ECF No. 36. Instead, they suggested that HB 136 should be assessed using the undue burden standard, as set forth in *Casey*. Defs.' Disc. Mot. at 4–5, 9–10. To the extent that State Defendants adhere to this view, they are wrong.

The undue burden standard "has no place where, as here, the state is forbidding certain women from choosing pre-viability abortions rather than specifying the conditions under which such abortions are to be allowed." *Isaacson*, 716 F.3d at 1225; *see also Bryant*, 363 F. Supp. 3d at 630 (holding that "under *Casey* and its progeny, [the undue burden standard] applies only to a pre-viability *regulation*," not to a 20-week abortion ban (emphasis added) (citation omitted)); *Edwards*, 786 F.3d at 1117 (rejecting argument that undue burden analysis applies to pre-viability ban, because "[b]y banning abortions after 12 weeks' gestation, the Act prohibits women from making the ultimate decision to terminate a pregnancy at a point before viability").

In any event, there can be no doubt that HB 136 imposes an undue burden on abortion access because it fails to confer benefits sufficient to justify the burdens it imposes. *See Whole Woman's Health*, 136 S. Ct. at 2309–10, 2300. The more severe the burdens, the more robust the state interests must be. *Id.* at 2310. Here the obstacle is not only substantial, but absolute: HB 136 flatly bars previability abortions. As the Tenth Circuit recognized in striking down Utah's 22-week ban under *Roe* and *Casey*, a previability abortion ban has the "effect of placing a substantial

obstacle in the path of a woman seeking to abort a nonviable fetus. . . . [i]t therefore imposes an undue burden on a woman's right to choose." *Jane L.*, 102 F.3d at 1118.

The same is true with respect to HB 136, and for the same reason, this law violates the Fourteenth Amendment and should be permanently enjoined.

## CONCLUSION

For the foregoing reasons, this Court should enter summary judgment on PPAU's claim that HB 136 violates the Fourteenth Amendment and grant declaratory and injunctive relief permanently barring State Defendants from enforcing HB 136, §§ 3 through 5.

Respectfully submitted,

| | |
|---|---|
| /s/ Julie Murray | /s/ John Mejia |
| Julie Murray* | John Mejia (Bar No. 13965) |
| Hannah Swanson* | AMERICAN CIVIL LIBERTIES UNION OF UTAH |
| PLANNED PARENTHOOD FEDERATION | FOUNDATION, INC. |
| OF AMERICA | 355 N. 300 W. |
| 1110 Vermont Avenue, NW, Suite 300 | Salt Lake City, UT 84103 |
| Washington, DC 20005 | (801) 521-9862 |
| (202) 803-4045 | (801) 532-2850 (fax) |
| (202) 296-3480 (fax) | jmejia@acluutah.org |
| julie.murray@ppfa.org | |
| hannah.swanson@ppfa.org | |
| | |
| Jennifer Sandman* | *Attorneys for Plaintiff Planned* |
| Hana Bajramovic* | *Parenthood Association of Utah* |
| PLANNED PARENTHOOD FEDERATION | |
| OF AMERICA | *Admitted pro hac vice* |
| 123 William Street, 9th Floor | |
| New York, NY 10038 | |
| (212) 261-4584 | |
| (212) 247-6811 (fax) | |
| jennifer.sandman@ppfa.org | |
| hana.bajramovic@ppfa.org | |

Dated: October 19, 2020

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2020, a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT was filed through CM/ECF and thus served by e-mail on the following counsel who are registered filers:

David N. Wolf
dnwolf@agutah.gov
Lance Sorenson
lancesorenson@agutah.gov
Assistant Utah Attorneys General
Office of the Utah Attorney General

Darcy Goddard
Office of the Salt Lake County District Attorney
Dgoddard@slco.org

/s/ Julie Murray
Julie Murray
PLANNED PARENTHOOD FEDERATION
OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
(202) 803-4045
(202) 296-3480 (fax)
julie.murray@ppfa.org
